Filed 6/27/14  Lillibridge v. Kennington CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD WILLIAM LILLIBRIDGE et al., | D062020, D062935 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00056194-CU-BC-NC) |
| JIM KENNINGTON et al., | |
| Defendants and Respondents. | |

CONSOLIDATED APPEALS from a judgment and order of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Niddrie, Fish & Addams, David A. Niddrie; Testa & Associates, James A. Testa and Deborah A. Ries for Plaintiffs and Appellants.

Soden & Steinberger and Jason W. Coberly for Defendants and Respondents.

Plaintiffs Richard William Lillibridge and American Motorhead, Inc. (together Plaintiffs) appeal a judgment entered in favor of defendants Jim Kennington, Spectrum Enterprises, LLC, and Augur Consulting, Ltd. (collectively Defendants) after the trial court sustained, without leave to amend, Defendants' demurrer to six causes of action

alleged in Plaintiffs' first amended complaint.  The trial court sustained the demurrer to the breach of contract and fraud/false promise causes of action as barred by applicable statutes of limitations.  On appeal, Plaintiffs contend: (1) their first amended complaint alleged sufficient facts to state timely breach of contract and fraud/false promise causes of action; and (2) the trial court abused its discretion by sustaining the demurrer without leave to amend.

In a second appeal we have consolidated with their first, Plaintiffs challenge a postjudgment order awarding Defendants attorney fees and costs incurred in defending against Plaintiffs' action.  Plaintiffs contend the trial court erred by awarding attorney fees to Defendants based on a provision in a promissory note.

FACTUAL AND PROCEDURAL BACKGROUND

Because the main appeal is from a judgment of dismissal following an order sustaining a demurrer without leave to amend, our factual background accepts as true the facts alleged in the complaint, together with facts that may be inferred from those expressly alleged.  (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 504-505.)  However, we do not accept the truth of contentions or conclusions of fact or law.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Furthermore, as we stated in *Barnett*, "to the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits."  (*Barnett*, at p. 505.)

Since 2002, Lillibridge has been the sole shareholder, officer, and director of American Motorhead, Inc. (AM) and its predecessor or affiliated corporations (apparently

2

American Passion, Inc. (API) and Harley's House of Harleys, Inc. (HHH)).  Prior to September 2003, Lillibridge also controlled HHH Staffing, Inc. (HSI), a wholly owned subsidiary of HHH, and Spectrum Enterprises, LLC (SE), a wholly owned subsidiary of HSI.[1]  Kennington was Lillibridge's financial consultant and the sole manager of SE.

In 2002, Lillibridge owned a residential property located at 330 Justina Drive in Oceanside (Property).  Lillibridge decided to sell the Property to obtain funds for the down payment to purchase a new residence in Valley Center.  On or about December 24, 2002, Lillibridge and SE entered into a real estate purchase agreement (Agreement), pursuant to which SE agreed to buy, and Lillibridge agreed to sell, the Property for a purchase price of $480,000.  Pursuant to the Agreement, SE gave Lillibridge a check for $130,000 as a deposit toward the purchase price.  The Agreement contained an integration clause, providing that the Agreement, including its incorporated addendum, "supercedes any and all prior agreements between the parties regarding the Property.  Neither [SE nor Lillibridge] shall be bound by any understanding, agreement, or representation, express or implied, not specified herein."  The Agreement was signed by Lillibridge, individually as the seller, and also on behalf of SE, the buyer, as its president.  Attached to the Agreement was an addendum (Addendum), which restated the purchase price of $480,000 and the down payment of $130,000.  The Addendum also described a "[w]rap loan," stating: "[Lillibridge] agrees to wrap the existing 1st Trust Deed in the

---

[1]     Lillibridge was the sole shareholder of AM's stock.  AM's ESOP (i.e., employee stock ownership plan) held all of the outstanding shares of stock of HSI, which held all of the membership interests in SE.

3

amount of THREE HUNDRED FIFTY [sic] and 00/1000 Dollars with Countrywide Home Loans [Countrywide] and will enter into a new loan with [SE] which has terms and conditions identical with said existing 1st Trust Deed."[2]  The Addendum further provided a "[c]losing date," stating: "This purchase agreement shall be fully exercised no later than April 30, 2002 [sic]."[3]

Also, on or about the time of the Agreement, SE, by its manager Kennington, signed a fixed/adjustable rate note (Note) in the principal amount of $350,000, payable to Lillibridge.  The Note provided that interest would accrue on the unpaid principal amount at the yearly rate of 5.75 percent, subject to adjustment after five years.  The Note provided that the amount of SE's payments would initially be $2,042.50 per month, subject to change.  Importantly, for purposes of this appeal, the Note provided:

> "I [SE] will pay principal and interest by making a payment every month. [¶] I will make my monthly payments on the first day of each month beginning on January 01, 2003.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. . . . If, on DECEMBER 01, 2032, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'Maturity Date.' [¶] I will make my monthly payments at 9875 Old Castel Road, Valley Center, CA or directly to Countrywide Home

---

[2]  We presume the $350 amount of the loan cited in the Addendum was a typographical error and that the parties intended to provide that the existing Countrywide loan was $350,000 and that Lillibridge would give SE a new loan in that amount with the same terms and conditions as the existing Countrywide loan.

[3]  We presume the April 30, 2002, date was a typographical error and that the parties intended that date to be April 30, *2003*, which was *after* the date on which the parties signed the Agreement (i.e., December 24, 2002).

Loans, PO Box 10219, Van Nuys, CA 91910 for credit to the loan #021418660 or at a different place if required by the Note Holder."

Finally, section 7(E) of the Note set forth an attorney fees provision, stating: "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

Also, on or about December 24, 2002, Lillibridge executed a quitclaim deed that conveyed title to the Property to SE (Deed). The Deed includes a notary public's acknowledgement of Lillibridge's signature. The Deed shows that $0 is the amount of the documentary transfer tax due, explaining the transfer of the Property is to a "wholey [sic] owned" transferee (i.e., SE). Lillibridge apparently delivered the Deed to SE at or about the time the Agreement was executed (i.e., December 24, 2002).

In or about September 2003, Kennington purchased all of the stock of HSI, which was the sole member (i.e., owner) of SE. On March 29, 2006, SE recorded the Deed with the San Diego County Recorder's Office.

In or about December 2008, Kennington discontinued providing financial consulting services to Lillibridge. In November 2009, Lillibridge discovered that SE was in escrow to sell the Property to a third party. Lillibridge filed a complaint against Defendants in San Diego County Superior Court case No. 37-2009-00061965-CU-CL-NC (Prior Action) and recorded a lis pendens against the Property. The parties thereafter stipulated that the lis pendens would be released, the pending sale of the Property to the

5

third party buyer could be closed, and the sale proceeds of approximately $140,000 would be held in escrow pending their mutual written instructions or further order of the court. Lillibridge apparently voluntarily dismissed the Prior Action in July 2011.

On or about July 12, 2011, Lillibridge filed a complaint against Defendants in the instant case (San Diego County Superior Court case No. 37-2011-00056194-CU-BC-NC) (Original Complaint), alleging eight causes of action: (1) breach of contract; (2) quiet title; (3) cancellation of deed; (4) breach of fiduciary duty; (5) fraud (promise without intent to perform); (6) fraud (promise without intent to perform); (7) common count to recover money paid by mistake; and (8) declaratory relief. The Original Complaint alleged that:

> "11. In or around December 2002, [Kennington], by and through his company, [SE], entered into an agreement for the purchase of the . . . Property. Pursuant to the parties' agreement, Defendants agreed to purchase the . . . Property for $480,000. However, Defendants were unable to secure financing immediately. As a result, Defendants persuaded Plaintiff to permit [Kennington] to move into the . . . Property as long as he made the existing mortgage payments as rent until such time as Defendants could secure financing to take out the existing loan against the . . . Property. At the same time, in or around December 2002, Plaintiff executed a Quitclaim Deed for the . . . Property in favor of [SE] to be held until such time as all conditions of the sale had been satisfied and Defendants obtained a new loan, removing Plaintiff from liability on the existing loan on the . . . Property.
>
> "12. Defendants prepared documentation to reflect the proposed transaction. The parties thereafter executed the relevant purchase and sale documents. *A copy of the executed purchase and sale documents are attached hereto as Exhibit 1 and incorporated herein by this reference.*
>
> "13. The parties agreed that [Kennington] would hold the Quitclaim Deed in trust until such time as all conditions of the sale had been

6

completed, including the take-out loan and payment of the purchase price in full. In or around March 2006, Defendants recorded the Quitclaim Deed without Plaintiff's permission to do so. Plaintiff did not discover the fact that the Quitclaim Deed had been recorded until after Defendants terminated their financial consulting services and advisement to Plaintiff in or around December 2008.

"14. *To date, Defendants have never paid any consideration for the . . . Property.* The loan on the . . . Property remains in the name of Plaintiff and Defendants never paid any consideration toward the purchase price of the . . . Property. Through a series of transactions orchestrated by Defendants, by and through their various entities, Defendants initially provided a check to Plaintiff in the amount of $130,000 . . . . [P]*laintiff never received any consideration for the purchase and sale of the . . . Property* . . . ."[4] (Italics added.)

It further alleged: "Defendants have breached the parties' written agreement by failing to pay the agreed upon consideration for the [P]roperty, failing to obtain the necessary wrap loan, and secretly recording the [Deed] for the [P]roperty."

Defendants demurred to the first and fifth causes of action in the Original Complaint (i.e., breach of contract and fraud/false promise claims), asserting the applicable statutes of limitations had run based on the complaint's factual allegations and attached exhibits. They argued that because Plaintiffs alleged Defendants had "never paid any consideration for" the Property, the four-year statute of limitations for a breach of written contract claim had run during the eight-year period since they had delivered the $130,000 check to Lillibridge in December 2002. They further argued SE had obtained

---

[4] The Original Complaint also included an allegation that Defendants caused Plaintiffs to simultaneously issue a $180,000 check to them, thereby allowing Defendants to purchase the Property with no money down and giving them a $50,000 windfall. However, because Plaintiffs' subsequent first amended complaint omitted that allegation, we do not include that allegation in the portion of the Original Complaint quoted above.

7

the necessary wrap loan by entering into a new loan with Lillibridge as shown by the Note attached to the Original Complaint. Finally, they argued the Agreement did not prohibit SE from recording the Deed, and the Agreement's integration clause precluded any oral or other agreement to the contrary. The trial court sustained Defendants' demurrer with leave for Plaintiffs to amend as to their breach of contract and fraud/false promise causes of action.

Plaintiffs filed the instant first amended complaint (Amended Complaint), alleging 12 causes of action for: (1) breach of contract; (2) quiet title; (3) cancellation of deed; (4) breach of fiduciary duty; (5) fraud (promise without intent to perform); (6) fraud (promise without intent to perform); (7) common count to recover money paid by mistake; (8) declaratory relief; (9) quasi contract - unjust enrichment; (10) restitution - unjust enrichment; (11) reformation; and (12) constructive trust. The Amended Complaint's breach of contract cause of action repeated most of the allegations set forth in the Original Complaint. However, instead of alleging Defendants "have never paid *any* consideration" for the Property as alleged in the Original Complaint, the Amended Complaint alleged Defendants "have never paid the *full* consideration" for the Property. (Italics added.) Also, instead of alleging Defendants provided Lillibridge with the $130,000 check through "their various entities" as alleged in the Original Complaint, the Amended Complaint alleged that because Defendants did not have the funds available to make the $130,000 down payment, AM transferred funds to HSI, which, in turn, transferred funds to SE and that SE used those funds to tender a $130,000 check to Lillibridge. Also, instead of alleging Defendants breached the Agreement by failing to

8

obtain the wrap loan and by recording the Deed without paying *any* consideration as alleged in the Original Complaint, the Amended Complaint alleged Defendants breached the Agreement by recording the Deed and selling the Property without paying the *full* amount of the purchase price (i.e., $480,000). The fifth cause of action for fraud/false promise alleged Defendants never intended to keep their promise to pay the $480,000 purchase price for the Property. The Amended Complaint, like the Original Complaint, attached as exhibits the Agreement, the Addendum, and the Note.

Defendants demurred to the Amended Complaint, asserting that the first and fifth causes of action were barred by applicable statutes of limitations. Regarding the four new causes of action alleged in the Amended Complaint (i.e., the ninth, 10th, 11th, and 12th causes of action), they asserted the trial court had not granted Plaintiffs leave to amend their Original Complaint to add new causes of action, and, in any event, applicable statutes of limitations barred those causes of action. Defendants also argued the trial court should apply the "sham pleading doctrine" to preclude Plaintiffs from amending the Original Complaint to omit harmful factual allegations or add inconsistent factual allegations without providing satisfactory explanations, and that the court should read into the Amended Complaint those omitted allegations. Defendants argued Plaintiffs should not be allowed to amend the Original Complaint to omit the allegation that Defendants "have never paid any consideration" for the Property and to instead allege in the Amended Complaint that Defendants "have never paid the full consideration" for the Property.

9

After hearing arguments of counsel, the trial court sustained Defendants' demurrer without leave for Plaintiff to amend the Amended Complaint. The trial court stated:

> "As the statute of limitations for breach of a written contract is four years, and over eight years have passed since the [Agreement] was executed until the complaint was filed, the cause of action fails. [Citations.] The original verified complaint alleged that '[t]o date, Defendants have never paid any consideration for the . . . Property.' [Citation.] During oral argument, Plaintiffs' counsel confirmed Defendants 'never paid the purchase price.' [Citation.] Here, Plaintiffs simply omit the allegation without explanation, now stating '[a]s a result of the above transactions, Defendants have never paid the full consideration representing the purchase price of the . . . Property.' [Citation.] Allegations in the original complaint that rendered it vulnerable to demurrer cannot be simply omitted without explanation in the amended pleading. The policy against sham pleadings requires the pleader to explain any such omission. Here, the original defect infects the [Amended Complaint] as well. [Citation.] The allegations pertaining to the statute of limitations are read into the [Amended Complaint], rendering it subject to demurrer on the same ground as the [Original Complaint]. [Citation.] As the statute of limitations for fraud based upon a false promise is three years, and over eight years have passed since the [Agreement] was executed until the complaint was filed, the cause of action fails. [Citations.]

> "As for the ninth through twelfth causes of action, Plaintiffs did not have leave to add them to the pleading and the demurrer is therefore sustained without leave to amend as to those causes of action."[5]

The trial court entered a judgment dismissing the six causes of action to which it sustained Defendants' demurrer (i.e., the first, fifth, ninth, 10th, 11th, and 12th causes of action). Plaintiffs timely filed a notice of appeal in case No. D062020.

---

5    In the same order, the trial court granted Defendants' motion to compel arbitration of the unrelated claims set forth in the second, third, fourth, sixth, seventh, and eighth causes of action in the Amended Complaint. That ruling is not challenged by Plaintiffs in the instant appeal.

After the judgment was entered, Defendants filed a Civil Code section 1717[6] motion for an award of their attorney fees pursuant to a contractual attorney fees provision. The trial court awarded Defendants attorney fees of $97,180 based on an attorney fee provision in the Note. Plaintiffs timely filed a notice of appeal of the attorney fee order in case No. D062935.

DISCUSSION

*Case No. D062020*

I

*Demurrer Standard of Review*

*General standard of review.* "A demurrer tests the legal sufficiency of the complaint. [Citation.] Therefore, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' [Citation.] The trial court exercises its discretion in declining to grant leave to amend. [Citation.] If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of proving the possibility of cure by amendment." (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 78.)

In reviewing an order sustaining a demurrer in whole or in part, "courts must assume the truth of the complaint's properly pleaded or implied factual allegations.

---

6      All statutory references are to the Civil Code unless otherwise specified.

11

[Citation.] Courts must also consider judicially noticed matters. [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) A complaint that is otherwise good on its face is nevertheless subject to demurrer when facts judicially noticed show it is defective. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.) An affirmative defense may be raised on demurrer and, if that defense appears on the face of the complaint, with consideration of judicially noticed facts, to necessarily bar one or more causes of action, the demurrer must be sustained in whole or in part. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403; *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155; *Evans*, at p. 6; *Joslin*, at p. 374.)

In reviewing an order sustaining a demurrer, we also consider exhibits incorporated into a complaint. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.) "*If facts appearing in the exhibits contradict those alleged* [in the complaint], *the facts in the exhibits take precedence*." (*Ibid.*, italics added.; see also *Barnett v. Fireman's Fund Ins. Co.*, *supra*, 90 Cal.App.4th at p. 505 [same]; *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 180 [we disregard allegations contradicted by the express terms of an exhibit incorporated into the complaint]; *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 ["[F]acts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence."].) " 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially

12

noticed [citation], may be disregarded . . . .' " (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)

*Sham pleading doctrine.* Where, as in this case, a demurrer is to an amended complaint, we may consider the factual allegations of prior complaints, which a plaintiff cannot discard or avoid by making contradictory averments in a superseding, amended pleading. (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957.) "Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions . . . . A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.) "Under the sham-pleading doctrine, admissions in an original complaint that has been superseded by an amended pleading remain within the court's cognizance and the alteration of such statements by amendment designed to conceal fundamental vulnerabilities in a plaintiff's case will not be accepted." (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1043, fn. 25.) Alternatively stated, "plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers . . . ." (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425.) "If a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take

13

judicial notice of prior pleadings and may disregard any inconsistent allegations." (*Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 151.)

"Allegations in the original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without explanation in the amended pleading.  The policy against sham pleadings requires the pleader to *explain* satisfactorily any such omissions.  Otherwise, the original defect 'infects' the subsequent pleading as well.  I.e., the self-destructive allegations of the original pleading will be 'read into' the amended pleading as well."  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 6.708, p. 6-178 (rev. #1, 2011).)  " 'Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation.' [Citations.]  'In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.' [Citation.]  However, we have also made it clear that 'a party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of mistake or inadvertence.' "  (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 836.)  Therefore, "[a]bsent an explanation for the inconsistency [of facts alleged in amended complaint with those alleged earlier], a court will read the original defect into the amended complaint, rendering it vulnerable to demurrer again."  (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044.)

In the context of proposed amendments, "the trial court has discretion to deny leave to amend when the proposed amendment omits or contradicts harmful facts pleaded

14

in a prior pleading unless a showing is made of mistake or other sufficient excuse for changing the facts. Absent such a showing, the proposed pleading may be treated as a sham. [Citations.] 'The well-established rule is that a proposed amendment which contradicts allegations in an earlier pleading will not be allowed in the absence of "very satisfactory evidence" upon which it is "clearly shown that the earlier pleading is the result of mistake or inadvertence." ' " (*Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 768.)

## II

### *Order Sustaining the Demurrer to the Amended Complaint*

Plaintiffs contend the trial court erred by sustaining Defendants' demurrer to the Amended Complaint because it alleged facts sufficient to state timely causes of action for breach of contract, fraud/false promise, and quasi-contract relief. Plaintiffs assert the "sham pleading doctrine" should not be applied to their allegations in the Original Complaint and Amended Complaint.

### A

Plaintiffs assert the sham pleading doctrine should not be applied because the Amended Complaint merely corrected their legal theory regarding their breach of contract cause of action and the factual allegations in the Amended Complaint were consistent with the allegations in the Original Complaint.

Based on our independent review of the Original Complaint, including the incorporated exhibit, and the Amended Complaint, including the incorporated exhibit, we conclude the Amended Complaint did not state a timely cause of action for breach of contract. First, as the trial court concluded, the allegations regarding payment of

15

consideration by Defendants in the two complaints are inconsistent. The Original Complaint alleged Defendants "have never paid *any* consideration" for the Property, and the Amended Complaint alleged Defendants "have not paid the *full* consideration" for the Property. (Italics added.) Although it is possible the two phrases could be read literally to be consistent with each other, we believe the only reasonable reading of those respective allegations in the context of the complaints is that the Original Complaint alleged Defendants had not paid any consideration and the Amended Complaint alleged, in effect, that Defendants had paid some, but not all, of the consideration for the Property.[7]

More importantly, we conclude the exhibits attached to both complaints contradict, and therefore we disregard, Plaintiffs' contrary allegations regarding payment of consideration for the Property. Exhibit 1 to the Original Complaint and the Amended Complaint consists of the same documents: (1) the Agreement; (2) the Addendum; and (3) the Note. Under the Agreement and the Addendum incorporated into both complaints, SE agreed to buy the Property from Lillibridge for a total purchase price of $480,000, to be paid in two parts: (1) a down payment of $130,000; and (2) a new promissory note from SE to Lillibridge in the amount of $350,000. The Addendum described the new note as a "wrap loan," stating: "*Seller* [Lillibridge] agrees to wrap the

---

7       A literal reading of those phrases alone arguably could support their consistency; specifically, if the Amended Complaint's allegation was read as meaning broadly that Defendants had paid less than all of the consideration (i.e., either none or only some of the consideration) for the Property. However, in the context of Plaintiffs' other allegations, we conclude that interpretation would not be reasonable.

16

existing 1st Trust Deed in the amount of THREE HUNDRED FIFTY [sic] and 00/1000 Dollars with Countrywide Home Loans [Countrywide] and *will enter into a new loan with Buyer* [SE] which has terms and conditions identical with said existing 1st Trust Deed."[8]  (Italics added.)  The Note attached to both complaints is consistent with the Addendum's description of the new note.  The Note is in the principal amount of $350,000, payable by SE to Lillibridge, with interest accruing on the unpaid principal amount at the yearly rate of 5.75 percent, subject to adjustment after five years.  The Note specifically provides that the amount of SE's payments to Lillibridge will initially be $2,042.50 per month, subject to change, with the first monthly payment due on January 1, 2003.  If any unpaid principal amount remained due on December 1, 2032, all unpaid principal and accrued interest would be payable in full on that date.  It further provides that SE is to pay its monthly payments to a Valley Center address (presumably the address of Lillibridge's new residence) or directly to an address for Countrywide (presumably Lillibridge's lender).  Therefore, the express terms and conditions of the Addendum and the Note provided that Lillibridge would, in effect, give SE "seller financing" for the $350,000 amount remaining after SE's $130,000 down payment. Those documents provided, in effect, that Lillibridge's existing loan from Countrywide would remain outstanding, while Lillibridge gave SE a new "wrap loan" for $350,000

---

[8]     As noted above, we presume the $350 amount cited in the Addendum was a typographical error and that the parties intended to provide that the existing Countrywide loan was $350,000 and that Lillibridge would give SE a new loan in that amount with the same terms and conditions as the existing Countrywide loan.

17

and received monthly payments from SE thereunder sufficient for him to, in turn, pay his monthly installments to Countrywide. Accordingly, on delivery to Lillibridge of a check for $130,000 and delivery to Lillibridge of the executed Note, SE *paid in full* the $480,000 purchase price for the Property and the sale of the Property to SE was completed.

We disregard any allegations in the Original Complaint or Amended Complaint to the contrary. (*Holland v. Morse Diesel Internat., Inc.*, *supra*, 86 Cal.App.4th at p. 1447 ["If facts appearing in the exhibits contradict those alleged [in the complaint], the facts in the exhibits take precedence."]; *Breneric Associates v. City of Del Mar*, *supra*, 69 Cal.App.4th at p. 180 [we disregard allegations contradicted by the express terms of an exhibit incorporated into the complaint]; *Dodd v. Citizens Bank of Costa Mesa*, *supra*, 222 Cal.App.3d at p. 1627 ["[F]acts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence."]; *Hoffman v. Smithwoods RV Park, LLC*, *supra*, 179 Cal.App.4th at p. 400 [" 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . .' "].) Therefore, we disregard both the Original Complaint's allegation that SE had never paid *any* consideration for the Property, as well as the Amended Complaint's allegation that SE *did not pay in full* the consideration/purchase price for the Property. We further disregard Plaintiffs' allegations that Kennington, and not SE, was the buyer of the Property. All of the documents attached to the complaints (i.e., the Agreement, the Addendum, and the Note) expressly identify the buyer (or borrower) as SE and not Kennington. Because the

18

complaints' allegations to the contrary are superseded by express provisions in those attached documents and the Agreement's integration clause (discussed below), Plaintiffs cannot state a breach of contract cause of action against Kennington.[9]

Furthermore, we disregard Plaintiff's allegation that the Agreement did not specify the time for payment of the purchase price for the Property, because the Addendum expressly provided the date by which that purchase price must be paid. The Addendum set forth the "[c]losing date," stating: "This purchase agreement shall be fully exercised no later than April 30, 2002 [sic]."[10] Because the documents attached to both complaints include a copy of a check, dated December 24, 2002, signed by Kennington on behalf of SE and payable to Lillibridge in the amount of $130,000 and the Note, bearing the date November 25, 2002, signed by Kennington on behalf of SE and payable to Lillibridge in the amount of $350,000, we presume both the check and the Note were delivered by SE to Lillibridge on or about December 24, 2002, thereby satisfying the Addendum's requirement that the sale transaction be "closed" (i.e., completed) on or before April 30, 2003.

---

[9] Assuming arguendo the Amended Complaint sufficiently alleged Kennington was SE's alter ego, we nevertheless conclude, as discussed below, the four-year statute of limitations ran on any breach of contract cause of action alleged against Kennington before Plaintiffs filed the Original Complaint.

[10] As noted above, we presume the April 30, *2002*, date was a typographical error and that the parties intended that date to be April 30, *2003*, which was *after* the date on which the parties signed the Agreement (i.e., December 24, 2002).

19

We further disregard, as contrary to the documents attached to the complaints, Plaintiffs' allegation that SE secretly recorded the Deed before paying in full the purchase price for the Property. First, as we concluded above, Defendants did, in fact, pay in full the $480,000 purchase price for the Property when SE delivered to Lillibridge the $130,000 down payment check and the Note in the amount of $350,000. Second, none of the documents attached to the complaints (i.e., the Agreement, the Addendum, and the Note) set forth any provision that could reasonably be construed as precluding SE from recording the Deed until the Note was paid in full. Furthermore, the Agreement contained an integration clause, providing that the Agreement, including its incorporated Addendum, "supercedes any and all prior agreements between the parties regarding the Property. Neither [SE nor Lillibridge] shall be bound by any understanding, agreement, or representation, express or implied, not specified herein." Therefore, to the extent Lillibridge alleges SE agreed not to record the Deed until the Note was paid in full, the integration clause precludes such agreement as contrary to the Agreement.

We conclude Plaintiffs' allegation that SE breached the Agreement by recording the Deed before paying in full the purchase price for the Property is contradicted by the documents attached to the Original Complaint and the Amended Complaint and therefore we disregard that allegation. The Amended Complaint's allegation that the parties agreed SE would pay the purchase price in full when SE was able to obtain third party financing and would hold the Deed unrecorded in trust for Lillibridge until the purchase price (or, alternatively, the Note) was paid in full, is contrary to the documents attached to the Amended Complaint and we therefore disregard that allegation. Likewise, to the extent

20

the Amended Complaint alleges SE breached the Agreement by selling the Property without Lillibridge's consent before paying in full the purchase price for the Property, that allegation is also contradicted by the documents attached to the Original Complaint and the Amended Complaint and we therefore disregard it. Plaintiffs do not allege, and the documents attached to the Amended Complaint do not show, SE breached the Note by not timely making monthly payments to Lillibridge. The Amended Complaint's first cause of action for breach of contract does not state a cause of action for breach of the Note.

Finally, the new allegation in the Amended Complaint that SE's monthly payments of $2,042.50 under the Note were "rent," and not loan, payments is also contradicted by the documents attached to the Amended Complaint. As discussed above, the Addendum expressly provided that Lillibridge will make "a new loan" to SE, and the Note expressly provided that SE would make monthly *loan* payments to Lillibridge toward the loan's principal amount of $350,000. The Note stated: "In return for a *loan* that I have received, I [SE] promise to pay U.S. $350,000 . . . , *plus interest*, to the order of *Lender* [Lillibridge]." (Italics added.) The Note cannot reasonably be interpreted as meaning the "loan" is, instead, a rental agreement, and the "Lender" is, instead, a landlord. Furthermore, by providing that interest would accrue on the unpaid principal balance of the Note, the parties clearly expressed their mutual intent that the instrument was, in fact, a loan and not a rental agreement. Plaintiffs do not explain how "interest" can accrue on rent, much less on an unpaid principal "rental" amount of $350,000. Accordingly, we

21

disregard Plaintiffs' allegation that the parties agreed SE's monthly payments would be rent, and not loan, payments.

Because the documents attached to the Original Complaint and the Amended Complaint contradict the allegations in the Amended Complaint's first cause of action for breach of contract, we disregard those contrary allegations. We disregard Plaintiffs' assertion that their breach of contract cause of action did not arise until late 2009 when they purportedly discovered SE had secretly recorded the Deed and attempted to sell the Property without Lillibridge's consent. On the contrary, the Agreement, the Addendum, and the Note, which are attached to the Amended Complaint, show, as we concluded above, SE paid the $480,000 purchase price in full when it delivered, on or about December 24, 2002, to Lillibridge the $130,000 check and the Note in the amount of $350,000, and that SE was not precluded from recording the Deed or selling the Property thereafter. The four-year statute of limitations for any breach of the written contract (Code Civ. Proc., § 337) ran long before Plaintiffs filed the Original Complaint in July 2011.[11] Therefore, the trial court correctly concluded the first cause of action alleged in

---

[11]    In so concluding, we need not, and do not, rely solely on the "sham pleading doctrine" as the trial court did. Rather, we note that doctrine provides further support for our conclusion, which is based primarily on the documents attached to the Original Complaint and the Amended Complaint that supersede the contrary allegations in the complaints.

the Amended Complaint for breach of contract was barred by the applicable statute of limitations. Plaintiffs have not carried their burden on appeal to persuade us otherwise.[12]

B

Plaintiffs also assert the trial court erred by concluding the Amended Complaint's fifth cause of action for fraud/false promise was barred by the applicable statute of limitations. That cause of action for fraud/false promise was based on the agreement between Lillibridge and SE for the sale and purchase of the Property. It alleged Kennington, as the buyer, represented to Lillibridge, as the seller, that he would pay the full purchase price (i.e., $480,000) for the Property, including the $130,000 down payment, at a future date when he "could come up with the funds to do so." It further alleged that at the time "Defendants made these promises, they had no intention of performing them and these promises were false. The true facts were that Defendants never intended to pay Plaintiff[s] for the . . . Property, that they intended to acquire legal title to the . . . Property without payment therefor, and that they intended [to] deprive [Lillibridge] of the . . . Property." It alleged Plaintiffs justifiably relied on Defendants' false promises, did not know and could not have known of their falsity, and relied to their

---

12    Likewise, to the extent Plaintiffs assert the Amended Complaint's allegations merely corrected erroneous legal conclusions in the Original Complaint and did not contradict the facts shown in the documents attached to the Original Complaint and the Amended Complaint, we disagree. The facts shown in those documents clearly contradict the factual allegations of the two complaints and therefore the documents superseded the complaints' contrary factual allegations.

23

detriment on those false promises (e.g., by executing the Deed and allowing Kennington to move into the Property).

However, the documents attached to the Original Complaint and the Amended Complaint contradict certain allegations in the Amended Complaint and, as discussed above, supersede those contrary allegations. The buyer was SE and not Kennington. More importantly, SE paid the $480,000 purchase price in full on delivery, on or about December 24, 2002, to Lillibridge of the $130,000 check and the Note in the amount of $350,000. Therefore, the documents attached to the Amended Complaint contradict the implied, if not express, allegation in the fifth cause of action for fraud/false promise that the purchase price had not been paid in full when Plaintiffs discovered the false promise in November 2009. In any event, to the extent the Amended Complaint alleged SE's promise was false when made (i.e., on or about December 24, 2002), the three-year statute of limitations for fraud (Code Civ. Proc., § 338, subd. (d)) had run long before Plaintiffs filed the Original Complaint in July 2011.

Furthermore, contrary to Plaintiffs' assertion, the delayed discovery rule does not apply in the circumstances of this case to toll the running of the statute of limitations until November 2009, when Plaintiffs alleged they first discovered the false promise. As we stated above, based on our review of the documents attached to the Amended Complaint, SE paid the $480,000 purchase price on or about December 24, 2002, and therefore there was no false promise to discover in November 2009. Assuming arguendo, as Plaintiffs assert, that Kennington owed Lillibridge a fiduciary duty as his financial advisor or otherwise, the delayed discovery rule would not apply in the circumstances of this case.

24

Therefore, the trial court correctly concluded the fifth cause of action alleged in the Amended Complaint for fraud/false promise was barred by the applicable statute of limitations. Plaintiffs do not carry their burden to persuade us otherwise.

C

Plaintiffs assert the trial court erred by sustaining Defendants' demurrer to the quasi-contract causes of action alleged in the Amended Complaint (i.e., ninth, 10th, 11th, and 12th causes of action). Their quasi-contract causes of action are based on a purported oral agreement that SE would not record the Deed or sell the Property until it paid the $480,000 purchase price in full. They argue that because Defendants would be unjustly enriched by accepting the benefits of that oral agreement with Plaintiffs, the statute of frauds should not be applied to preclude relief based on that oral contract. In effect, Plaintiffs argue their written contracts with Defendants (i.e., the Agreement, the Addendum, and the Note) were subject to that oral agreement, which, under their quasi-contract theory, should be enforceable despite the statute of frauds that requires an agreement for the sale of real property to be in writing.

First, the trial court, as Defendants assert, expressly sustained the demurrer to those causes of action because it had not granted leave for Plaintiffs to amend the Original Complaint to add new causes of action (e.g., quasi-contract causes of action). The court stated: "As for the ninth through twelfth causes of action, Plaintiffs did not have leave to add them to the pleading and the demurrer is therefore sustained without leave to amend as to those causes of action." Plaintiffs did not carry their burden below, and do not carry their burden on appeal, to show there is a reasonable possibility the

25

Original Complaint (or the Amended Complaint) could be amended to state quasi-contract causes of action.

More importantly, as stated above, based on our review of the documents attached to the Amended Complaint that supersede contrary allegations in the Amended Complaint, SE paid the $480,000 purchase price on or about December 24, 2002, and therefore there could be no breach of the purported oral agreement that SE could not record the Deed or sell the Property until it had paid the purchase price in full. Furthermore, because any breach of that oral agreement would have occurred more than two years before July 2011 when Plaintiffs filed the Original Complaint, the two-year statute of limitations for oral contracts (Code Civ. Proc., § 339) applies to bar the quasi-contract causes of action. To the extent Plaintiffs assert the three-year fraud statute of limitations (Code Civ. Proc., § 338, subd. (d)) applies instead of the two-year statute of limitations, we likewise conclude that statute of limitations also had run by the time the Original Complaint was filed in July 2011. Finally, as Defendants assert, there can be no quasi-contract cause of action where an express written agreement exists that defines the parties' rights. (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 172-173; *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419-1420.) Therefore, the trial court correctly sustained the demurrers to the Amended Complaint's quasi-contract causes of action. Plaintiffs do not carry their burden to persuade us otherwise.

*Trial Court's Denial of Leave to Amend*

Plaintiffs contend the trial court abused its discretion by denying them leave to amend the Amended Complaint when it sustained Defendant's demurrer. They argue it is reasonably possible they can amend the Amended Complaint to timely state a breach of contract cause of action against Defendants. They cite the testimony of Ernest S. Ryder, apparently Lillibridge's tax attorney, set forth in the transcript from his deposition involving unrelated claims in the instant action. They argue that testimony is judicially noticeable and shows: (1) SE's failure to pay consideration for the Property first became a breach when SE recorded the Deed and sold the Property without Lillibridge's consent; and (2) Lillibridge did not discover that breach until November 2009 because he reasonably relied on Kennington's actions as his financial advisor and fiduciary. However, our review of that deposition testimony does not support Plaintiffs' argument they could amend the Amended Complaint to timely state a breach of contract cause of action. That testimony, in general, discusses the circumstances of and reasons for forming SE and Kennington's relationship to that and other entities. It does not show there is any further information to support amendments to the Amended Complaint. More importantly, that testimony does not refute our conclusion above that SE paid the $480,000 purchase price in full on or about December 24, 2002, when it delivered to Lillibridge the $130,000 check and the Note in the amount of $350,000. Therefore, there could be no breach of contract thereafter for recording the Deed or selling the Property without first paying the purchase price in full. Likewise, to the extent Plaintiffs assert

27

they could amend the Amended Complaint to allege SE's monthly payments pursuant to the Note are "rent," and not loan payments, we concluded above the documents attached to the Amended Complaint show those payments are loan payments and therefore supersede any contrary allegations. Plaintiffs have not carried their burden on appeal to show it is reasonably possible to amend the Amended Complaint to state a breach of contract cause of action. (*Grinzi v. San Diego Hospice Corp.*, *supra*, 120 Cal.App.4th at p. 78.)

*Case No. D062935*

IV

*Order Awarding Attorney Fees to Defendants*

In their appeal in case No. D062935, Plaintiffs contend the trial court erred by awarding attorney fees to Defendants pursuant to an attorney fee provision in the Note. They argue that contractual provision does not apply to Defendants' defense of the instant causes of action.

A

After the trial court sustained Defendants' demurrer and the judgment was entered in their favor, Defendants filed a section 1717 motion for an award of their attorney fees pursuant to an attorney fees provision in the Note. Defendants cited section 7(E) of the Note, which states:

> "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

28

Defendants argued that because Plaintiffs would have been entitled thereunder to recover their attorney fees had they prevailed on their claim that Defendants had failed to pay for the Property, they are entitled to an award of attorney fees for successfully defending against that claim.

In opposing Defendants' motion, Plaintiffs argued the Note's attorney fee provision applied only to defaults under the Note, citing sections 7(B) and 7(C) of the Note, which state:

> "**(B)  Default**  [¶]  If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
>
> "**(C)  Notice of Default**  [¶]  If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. . . ."

Plaintiffs argued that section 7(E) of the Note restricted attorney fee awards to only actions for default "as described above," which necessarily means only defaults under sections 7(B) and 7(C) of the Note.  They argue that because their action against Defendants did *not* involve an action for default under the Note (i.e., an action after acceleration of the unpaid principal and interest amounts under the Note), section 7(E) of the Note did not support an award of attorney fees under section 1717.

In reply, Defendants argued that Plaintiffs' action did, in effect, accelerate the amount due under the Note because Plaintiffs sought immediate payment in full of the $350,000 Note amount as a portion of the $480,000 purchase price that allegedly was not paid.  They further argued that by incorporating the Note along with the Agreement and

29

the Addendum, Plaintiffs' breach of contract cause of action was based on all of those documents, not just the Agreement, and therefore the Note's attorney fee provision applied to Plaintiffs' action on the contract.

On October 22, 2012, the trial court awarded Defendants attorney fees of $97,180 based on the attorney fee provision in the Note. The court quoted section 1717 and stated that it "changes a one-way attorney's fee provision to a two-way fee provision where the non-specified party is the prevailing party. Here, the purchase agreements include a one-way attorney's fees provision in favor of [Lillibridge]. The [Original Complaint] and [Amended Complaint] had an exhibit including the [Property purchase documents], one of which was the [Note]." The court then quoted section 7(E) of the Note and concluded: "The provision speaks to the situation in which [Lillibridge] accelerates the [Note]. Even though there was no written demand to accelerate the [Note], filing this lawsuit constitutes an attempt to do so. [Lillibridge], as the [Note] holder, would have therefore been entitled to an award of attorney's fees if he had prevailed on his claims that Defendants failed to pay for the [Property]. Defendants are the prevailing [party] because they obtained a judgment dismissing Plaintiffs' claims regarding the [Property]. Defendants are therefore entitled to attorney's fees pertaining to the relevant causes of action." The court rejected Plaintiffs' argument that their action was solely on the Agreement (which did not include an attorney fee provision) and not on the Note, stating that argument "ignores the express allegations set forth by [P]laintiffs in the [Amended Complaint] at paragraphs 12 and 13, and in particular paragraph 13, which incorporates by reference a copy of the executed purchase and sale documents attached as Exhibit 1 to

30

the [Amended Complaint]."  Accordingly, the court awarded Defendants $97,180 for reasonable attorney fees incurred in "litigating the claims that Defendants did not pay for the [Property] and issues common to all causes of action."  The court's award was against only Lillibridge.

B

Section 1717, subdivision (a), provides:

> "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then *the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees* in addition to other costs.

> "Where a contract provides for attorney's fees, as set forth above, *that provision shall be construed as applying to the entire contract*, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. . . ."  (Italics added.)

"[S]ection 1717 applies to contracts containing reciprocal as well as unilateral attorney fee provisions, including provisions . . . authorizing recovery of attorney fees by a 'prevailing party.' "  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 614, fn. omitted.)

"Section 1717 was enacted by the Legislature to ensure mutuality of remedy in the recovery of attorney's fees.  [Citation.]  Thus, where a contract provides that only one party may obtain attorney's fees in litigation, the statute makes the right to such fees reciprocal, such that the 'party prevailing on the contract' claim will be entitled to recovery of the fees, ' "whether he or she is the party specified in the contract or not." ' "

(*Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254,

31

1268.) Importantly for this case, section 1717 also provides that even if a contractual attorney fee provision expressly applies only to certain types of actions by one party (e.g., default actions), the provision will be applied to actions involving the *entire contract*. (§ 1717, subd. (a); *Ganey v. Doran* (1987) 191 Cal.App.3d 901, 911 [attorney fee provision that expressly applied only to default actions was applied to the entire contract under section 1717]; see also *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1607-1608; *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1147-1148; *Harbor View Hills Community Assn. v. Torley* (1992) 5 Cal.App.4th 343, 346-349.)

C

Plaintiffs argue on appeal, as they did below, that because the Note's attorney fee provision expressly applies only to defaults under section 7 of the Note, their breach of contract cause of action, which sought damages for nonpayment of the full $480,000 purchase price for the Property, was not a "default" action under the Note that would support an attorney fee award. However, as discussed above, under section 1717 a contractual attorney fee provision that expressly limits an attorney fee award to one party and/or to only certain types of action (e.g., default actions) is instead to be applied to both parties and to the entire contract (i.e., all actions thereon) and not to just certain types of actions.[13] (§ 1717, subd. (a); *Ganey v. Doran*, *supra*, 191 Cal.App.3d at p. 911 [attorney

_____

[13]    Section 1717 provides an exception to this general rule when both parties are "represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (§ 1717, subd. (a).) Plaintiffs do not, and cannot reasonably, argue that exception applies to this case.

32

fee provision that expressly applied only to default actions was applied to the entire contract under section 1717]; *Beeman v. Burling*, *supra*, 216 Cal.App.3d at pp. 1607-1608; *Sears v. Baccaglio*, *supra*, 60 Cal.App.4th at pp. 1147-1148; *Harbor View Hills Community Assn. v. Torley*, *supra*, 5 Cal.App.4th at pp. 346-349.)  Therefore, we conclude the trial court correctly applied the Note's attorney fees provision to all actions on the entire contract and not just defaults under section 7 of the Note.

Plaintiffs further argue, as they did below, that the Note's attorney fees provision did not apply to their breach of contract cause of action, because the Agreement did not contain an attorney fees provision and they did not claim any default under the Note. However, we conclude, as the trial court did, that because the Note was included in the documents attached to the Amended Complaint and constituted part of the express written agreements for the sale of the Property to SE that Plaintiffs alleged were breached, the Note's attorney fees provision applies to Plaintiffs' breach of contract cause of action.  Furthermore, as the trial court concluded, Plaintiffs, in effect, accelerated the amounts payable under the Note by filing the instant action for recovery of the $350,000 amount of the Note Plaintiffs alleged was part of the unpaid $480,000 purchase price for the Property allegedly now due as a result of SE's wrongful recording of the Deed and sale of the Property.  Accordingly, we conclude the trial court did not abuse its discretion by awarding Defendants the reasonable attorney fees they incurred in defending Plaintiffs' contract causes of action.

DISPOSITION

The judgment is affirmed.  The order awarding attorney fees to Defendants is affirmed.  Defendants shall recover their costs on appeal.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.